# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

```
* * * * * * * * * * * * * * * * * * * *
ANNE ABBOTT,                          *
on behalf of her minor child, R.A.    *
                                      *    No. 14-907V
              Petitioner,             *    Special Master Christian J. Moran
                                      *
v.                                    *    Filed: July 15, 2016
                                      *
SECRETARY OF HEALTH                   *    Attorneys' fees and costs, interim
AND HUMAN SERVICES,                   *    award, protracted litigation, costs for
                                      *    experts
              Respondent.             *
* * * * * * * * * * * * * * * * * * * *
```

<u>Andrew Downing</u>, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner;
<u>Jennifer Reynaud</u>, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES
AND COSTS ON AN INTERIM BASIS**[1]

On September 26, 2014, the petitioner, Anne Abbott, filed a petition on behalf of her minor child, R.A., seeking compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §§300aa-10 through 34 (2012) (the "Vaccine Act"). Less than ten months later, she filed a motion for interim attorneys' fees and costs. Motion for Interim Attorneys' Fees and Costs ("Pet'r's Mot."), filed July 1, 2015. Ms. Abbott seeks $53,627.59 in interim attorneys' fees and costs. After failing to resolve the matter with respondent, Ms. Abbott filed a motion seeking a ruling on her motion for interim attorneys' fees and costs. Mot.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

for Decision on Interim Attorneys' Fees and Costs ("Pet'r's Second Mot."), filed Feb. 10, 2016.

Ms. Abbott's motion for interim attorneys' fees and costs is **GRANTED IN PART.  The undersigned awards interim attorneys' fees and costs in the amount of $37,050.09 and reserves the issue of the costs paid for Ms. Abbott's expert, Dr. Seigler, for a later determination.**

## Procedural History

The billing records show that Ms. Abbott's counsel, Mr. Andrew Downing, began working on the case in mid-June 2014 while at his former law firm.  Pet'r's Mot., Attach. A, filed July 1, 2015, at 42.  The petition was filed approximately three months later on September 26, 2014.  Ms. Abbott alleges that R.A. suffered injuries caused-in-fact by the measles, mumps, and rubella ("MMR") vaccine she received on June 12, 2012.  Petition at 1-2.  Ms. Abbott further alleges that her claim meets the definition of a "Table claim" because R.A. developed encephalitis within 5-15 days of vaccination.  Id. at 2; see 42 C.F.R. § 100.3(a)(III)(B) (2015).

In support of her claim, Ms. Abbott filed the expert report and curriculum vitae ("CV") of Dr. David Axelrod.  See exhibits 12-13, filed Jan. 5, 2015.  The undersigned scheduled a status conference for January 9, 2015.  The morning of the status conference, Ms. Abbott filed the medical literature referenced in Dr. Axelrod's report.  See exhibits 14-27, filed Jan. 9, 2015.

During the status conference, the undersigned discussed the factual basis for Ms. Abbott's claim that R.A.'s injury qualified as a "Table claim."  See Order, issued Jan. 9, 2015, at 1.  The undersigned suspended the deadline for respondent's Rule 4 report and ordered respondent to file a status report addressing Ms. Abbott's factual assertions.  Id.  In her status report, respondent argued that Ms. Abbott had failed to establish R.A. displayed symptoms of an acute encephalopathy as defined by the Qualifications and Aids to Interpretation ("QAI") to the Vaccine Injury Table the day before her seizure.  Resp't's Status Rep., filed Jan. 26, 2015, at 1-2; see 42 C.F.R. § 100.3(b)(2)(i) (definition of acute encephalopathy).  Approximately ten days later, the undersigned held another status conference during which "[t]he parties agreed that an onset hearing would be fruitful."  Order, issued Feb. 5, 2015.

Over the next two months, the parties prepared for an onset hearing.  Ms. Abbott filed supplemental statements from her husband and herself, and sought

2

additional statements from family and friends and relevant social media posts and videos.  See exhibits 28-29, filed Feb. 23, 2015.  During an April 16, 2015 status conference, Mr. Downing indicated that Ms. Abbott would not be filing any additional affidavits but had located and would be filing some video footage.  See order, issued Apr. 16, 2015.  Mr. Downing indicated that Ms. Abbott had retained a pediatric neurologist to opine in the case.  In light of that additional information, "[t]he parties agreed that an entitlement hearing [was] preferred over a separate onset hearing."  Id.

In late June 2015, Ms. Abbott filed the expert report and CV from Dr. David Siegler.  See exhibit 30, corrected copy filed June 29, 2015; exhibit 31, filed June 26, 2015.  She filed the medical literature cited by Dr. Seigler approximately one month later.  See exhibits 32-42, filed Aug. 7, 2015.

During this same time period, Ms. Abbott filed her motion for interim attorneys' fees and costs.  From August 10 to November 2, 2015, the parties filed numerous responses, replies, and supplemental briefs regarding Ms. Abbott's request.

On October 16 and 23, 2015, respondent filed expert reports, CVs, and referenced medical literature from Drs. Thomas Forsthuber and John Zempel.  See exhibits A-R.  Ms. Abbott filed additional medical records, supporting documentation, medical literature, and a rebuttal expert report from Dr. Seigler.  See exhibits 47-50, filed Jan. 4 and 8, 2016.

The undersigned held a status conference on January 11, 2016, to discuss the parties' expert reports, potential hearing dates and locations, and Ms. Abbott's unresolved motion for interim attorneys' fees and costs.  See Order, issued Jan. 11, 2016, at 1.  During the call, the parties indicated they were attempting to resolve informally the issue of interim attorneys' fees and costs.  See id.  An entitlement hearing was scheduled for January 19, 2017.  Order, issued Feb. 9, 2016.[2]

On February 10, 2016, Ms. Abbott filed a motion requesting a ruling on her July 1, 2015 motion for interim attorneys' fees and costs.  She indicates the parties

---

[2] In a July 14, 2016 status conference, Mr. Downing stated that holding a hearing in Washington, DC on January 19, 2017, was problematic due to the Presidential Inauguration.  Additionally, Mr. Downing also represented that petitioner may obtain another expert.  For these reasons, the hearing actually may not be held until June 2017.

were unable to resolve the matter informally and asks the undersigned to issue a decision awarding the full amount requested. Pet'r's Second Mot. at 2.

## Analysis

The parties' briefs raise a series of sequential questions, each of which requires an affirmative answer to the previous question. First, whether special masters possess the authority to award attorneys' fees and costs on an interim basis? Second, whether Ms. Abbott has submitted evidence that makes her eligible to receive an award of attorneys' fees and costs? Third, whether, as a matter of discretion, Ms. Abbott should be awarded her attorneys' fees and costs on an interim basis? Fourth, what is a reasonable amount of attorneys' fees and costs? These questions are addressed below.

**1. Authority to Award Attorneys' Fees and Costs on an Interim Basis**

The Federal Circuit stated that the Vaccine Act permits an award of attorneys' fees and costs on an interim basis. Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008).

Nevertheless, respondent reiterates her standing objection to any interim award, maintaining that the Vaccine Act allows an award of attorneys' fees and costs only when awarding compensation, or after judgment has entered. Resp't's Resp. to Pet'r's Mot. for Interim Attorneys' Fees and Costs ("Resp't's Opp'n"), filed Aug. 10, 2015, at 4 (citing portions of 42 U.S.C. §300aa-15(e)(1)). Respondent maintains that the Federal Circuit's decisions in Avera and Cloer are not contrary to this argument since judgment had entered in both cases when interim fees and costs were awarded. Id. at 4 n.3; see also Avera, 515 F.3d 1343; Cloer, 675 F.3d 1358.[3]

In light of the Federal Circuit's decisions in Shaw and Avera, special masters (including the undersigned) have rejected respondent's argument that interim awards are not permitted under the Vaccine Act. See Fester v. Sec'y of Health & Human Servs., No. 10-243V, 2013 WL 5367670, at *8 (Fed. Cl. Spec.

---

[3] Respondent claims her failure to raise her statutory argument in Shaw does not operate as a waiver in this case because non-mutual offensive collateral estoppel does not apply against the government. Resp't's Resp. to Pet'r's Mot. for Interim Attorneys' Fees, filed Aug. 10, 2015, at 4 n. 3 (citing United States v. Mendoza, 464 U.S. 154, 162 (1984)).

4

Mstr. Aug. 27, 2013) (declining to revisit Shaw); Crutchfield v. Sec'y of Health & Human Servs., No. 09-39V, 2011 WL 3806351, at *5 (Fed. Cl. Spec. Mstr. Aug. 4, 2011) (citing numerous supporting decisions); Paluck v. Sec'y of Health & Human Servs., No. 07-889V, 2011 WL 1515698, at *1-3 (Fed. Cl. Spec. Mstr. Mar. 30, 2011). So, too, in this case, the Secretary's argument is not persuasive. Binding precedent demonstrates interim attorneys' fees and costs may be awarded.

## 2. Eligibility for An Award of Attorneys' Fees and Costs

A petitioner who has not received compensation may be awarded "compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1).

Respondent does not argue that Ms. Abbott lacks good faith, and there is no evidence to indicate Ms. Abbott does not believe her claim is valid. Thus, the undersigned finds the petition was brought in good faith.

Respondent also does not argue that Ms. Abbott lacks a reasonable basis. The undersigned finds that, based on the record as it currently stands, there is a reasonable basis for Ms. Abbott's claim. Ms. Abbott has filed expert reports from an immunologist, Dr. Axelrod, and a pediatric neurologist, Dr. Siegler. Additionally, R.A. experienced symptoms of her condition alleged as caused by vaccination 16 days after vaccination.[4] This evidence of expert opinion and appropriate timing is sufficient to establish reasonable basis. See Chuisano v. United States, 116 Fed. Cl. 276, 287 (2014) (upholding the special master's finding that evidence of a temporal relationship alone without other evidence, such as an expert opinion, is not sufficient to establish reasonable basis).

## 3. Appropriateness of an Interim Award

When a petitioner meets the eligibility requirements for an award of attorneys' fees and costs on an interim basis, the special master has discretion to make such an award. See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl.

---

[4] Although the parties disagree as to the cause of R.A.'s seizures, their timing relative to vaccination is not disputed. See exhibit 4 at 109 (showing date of vaccination as June 12, 2012); exhibit 2 at 66 (date of seizure); exhibit 30 at 1 (Dr. Siegler's expert report acknowledging timing); exhibit C at 3 (Dr. Zempel's expert report acknowledging timing).

86, 92 (2016) (even after good faith and reasonable basis have been established, the special master must determine "whether to exercise his or her discretion to award attorneys' fees and costs"); cf. Avera, 515 F.3d at 1352 (holding that even though permitted under the Vaccine Act, an interim award was not appropriate in that case). When determining the appropriateness of an interim award, the Federal Circuit has considered such factors as protracted proceedings, costly experts, and undue hardship. Shaw, 609 F.3d at 1375; Avera, 515 F.3d at 1352.

Ms. Abbott argues that an interim award is appropriate because she has satisfied the requirements set forth in Avera. Specifically, Ms. Abbott claims that her case is protracted, involves costly experts, and that she and her attorney would suffer undue hardship unless her request for interim attorneys' fees and costs is granted. Pet'r's Mot. at 10-17; Supp'l Br. on Undue Burden, filed Oct. 2, 2015.

Respondent argues that an award of interim attorneys' fees and costs is not warranted at this time because this case does not involve any of the Avera factors. Resp't's Opp'n at 3. Specifically, respondent argues that the proceeding is not protracted, the expert expenditures in this case were not excessively costly, and the undue hardship described in Avera must be suffered by Ms. Abbott, not by her counsel. Id. at 7-8. Respondent argues that an award of interim attorneys' fees and costs is discretionary and not justified in this case. Id. at 5.

### A. Undue Hardship

The undue hardship standard discussed in Avera and Shaw includes hardship for counsel as well as petitioners. This conclusion appears to be the consensus among judicial officers. See Rehn, 126 Fed. Cl. at 94; Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669, at *8 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). Thus, the undersigned rejects respondent's argument that only undue hardship experienced by Ms. Abbott would justify an interim award.

### B. Costly Experts

Ms. Abbott has become responsible for $14,150.00 in expert costs ($2,000.00 to Dr. Axelrod and $12,150.00 to Dr. Seigler). This amount is mid-range, neither trivial nor exorbitant. Thus, the costs paid to experts in this case is a relatively neutral factor and does not support or detract from petitioner's assertion that interim fees and costs should be paid.

6

### C. Protracted Litigation

Ms. Abbott argues that even a case pending for approximately one year can be thought to be protracted. Pet'r's Mot. at 12-13. In support, Ms. Abbott cites two cases: Bear v. Sec'y of Health & Human Servs., No. 11-362V, 2013 WL 691963 (Fed. Cl. Spec. Mstr. Feb. 4, 2013); Becker v. Sec'y of Health & Human Servs., No. 13-687V, 2014 WL 4923160 (Fed. Cl. Spec. Mstr. Sept. 11, 2014). The first citation, Bear, 2013 WL 691963, appears to be in error. That petition was filed on June 8, 2011, and the relevant motion was filed on September 13, 2012. Id. at *1. This means that the case "has been pending more than 19 months." Id. at *5.

In addition, in both Bear and Becker, the interim award was justified, in part, because the attorneys seeking interim fees were withdrawing from the case. The withdrawal of an attorney may favor an interim award. See Woods v. Sec'y of Health & Human Servs., 105 Fed. Cl. 148, 154 (2012). Thus, both Bear and Becker are easily distinguished from Ms. Abbott's case.[5]

Although a case pending less than two years is usually not "protracted," Al-Uffi, 2015 WL 6181669, at *7-8, it is easy to infer that the litigation in this case will become protracted. The earliest mutually convenient date for an entitlement hearing had been January 2017 and now may not be June 2017. See note 2, above. The delay in adjudication, to date, is due to a steady increase in the number of petitions filed each year. However, Ms. Abbott's recent decision to explore retaining an additional expert contributes to some delay in scheduling the hearing. After the entitlement hearing, the parties may file post-hearing briefs. Then the case will be added to the queue of cases to be decided.

Because it is not expected that this case will be resolved for some time, Ms. Abbott and her counsel would suffer undue hardship if denied any payment prior to its conclusion. Thus, the undersigned finds that an interim award is warranted in this case.

---

[5] Furthermore, although Ms. Abbott filed her motion less than one year after she had filed her petition, the motion has been pending for approximately one year during which the parties attempted to resolve the dispute over fees. Thus, while the filing of the motion for an award of attorneys' fees may have been premature, the actual award is not.

7

**4. Reasonableness of Requested Amounts**

Ms. Abbott seeks $37,297.00 in attorneys' fees and $16,330.59 in costs for a total of award of $53,627.59. Pet'r's Mot. at 33. Of the $16,330.59 requested for costs, $14,150.00 is for costs paid to Ms. Abbott's experts in this case. Id. at 22-23.

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach. Avera, 515 F.3d at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton ex rel. v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is significantly lower than the forum rate. Avera, 515 F.3d at 1349. If these two requirements are met, the Davis exception applies, and that petitioner's counsel is paid according to the local rate. Id.; see Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 757-60 (D.C. Cir. 1999).

The statutory requirement that only reasonable amounts be awarded applies to costs as well as fees. See Perriera v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees. Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).

**A. Attorneys' Fees**

**(1) *Hourly Rate for Mr. Downing***

Ms. Abbott seeks an hourly rate of $350.00 for Mr. Downing, $190.00 for the two associates assisting in this case, and $100.00 for the paralegals working on the case. Pet'r's Mot. at 18-19. Ms. Abbott maintains the local attorney rates for her counsel are not significantly lower than the forum rates, and thus, forum rates ought to apply in this case. Id. at 18-19, 28.

Respondent argues that the hourly rate of $350.00 sought for Ms. Abbott's counsel, Mr. Downing, is unreasonable. Instead, respondent contends that both the

local and forum rates for Mr. Downing should be $295.00 for work performed in 2014, and $296.00 for work performed in 2015.  Resp't's Opp'n at 11-16.

Respondent's arguments regarding the hourly rate to be paid for Mr. Downing's work occurred prior to the issuance of several relevant decisions.  In September 2015, another special master issued a decision determining an appropriate forum rate for attorneys in one of the most active firms practicing in the Vaccine Program.  See McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  In this comprehensive decision, the special master provided a range for the appropriate forum rate for any attorney practicing in the Program, dependent upon the attorney's years of experience.  Id., at *19.  Later that same month, another colleague determined that Mr. Downing should be paid at an hourly forum rate of $350.00.  Al-Uffi, 2015 WL 6181669, at *11.

The undersigned agrees with the analysis in those decisions and adopts the same reasoning in this case.  The hourly rate of $350.00 for work performed by Mr. Downing is reasonable.

### (2) *Number of Hours Billed*

For work on this case, Mr. Downing billed for 5.50 while at his former firm, and 66.10 hours while at his current firm, for a total of 71.60 hours.  Pet'r's Mot., Attach. A, at 24, 42.  Contrasting Mr. Downing's total hours with the 50.6 hours billed by the associates, respondent reasons that the total amount billed by Mr. Downing is excessive.  Resp't's Opp'n at 16.  Other than specific challenges to the amounts billed for preparation of the motion for interim fees and costs, respondent provides no specifics.  Id. at 17-18.

Seeking to justify the number of hours billed by Mr. Downing compared to hours billed by the associates, Ms. Abbott emphasizes that "[n]either associate had ever handled matters pertaining to vaccine claims" until Mr. Downing joined the firm in July 2014.  Pet'r's Reply to Resp't's Opp'n (Pet'r's Reply), filed Aug. 11, 2015, at 14.  Ms. Abbott asserts Mr. Downing "delegated matters to the law firm's associates as [he] deemed the associates were ready to take on certain tasks."  Id.

Some tasks performed by the attorneys are better characterized as paralegal work, and some tasks are secretarial in nature.  When performing work which could be performed by a paralegal, attorneys generally are paid for their time but at a paralegal rate.  Secretarial work is generally not compensated as these hours are

9

considered part of a firm's overhead cost. The undersigned has reduced the amount of attorneys' fees awarded by $1,925.00.

Some of the hours expended by the associates in this case would not be compensated if performed by Mr. Downing. The associates are being paid at a lower rate because they are less experienced. It is assumed that they will be less efficient and will expend more hours on certain tasks.

However, allowances for less efficiency apply only to tasks appropriately assigned. As respondent raised in her Opposition, Justin N. Redman (JNR) billed only 3.5 hours in this case, all associated with drafting the fee application. Resp't's Opp'n at 18. Two hours of this time was spent becoming familiar with the case in order to review the draft fees application, and 1.5 hours reviewing the draft fees application. Of note, the draft fees application was also reviewed by JCR, who was already familiar with the case. Given this redundancy, the undersigned reduces the amount of attorneys' fees awarded by the total amount billed by JNR, $682.50.

Additional deductions to the hours billed for the interim fee application are also necessary. Respondent notes that Mr. Downing has filed interim fees and costs applications in at least three other similar cases, and that these applications "are virtually identical to that filed in this case, except for a handful of case specific changes." Resp't's Opp'n at 17. The Secretary asserted that the amounts charged for preparing fee applications in those three other cases were $12,808.50, $5,355.00, $10,471.00. Resp't's Opp'n at 17 n.14.

After comparing the fees application in Brasher v. Sec'y of Health & Human Serv., No. 13-1017 (filed June 25, 2015) to the one in this case, the undersigned finds substantial overlap. The table of contents suggests an identical structure and the arguments within each section are quite similar.

While reusing an existing document is reasonable and can contribute to increased efficiency, the amount of hours billed to produce such a document should be commensurate with its reuse. Copying and pasting from one brief to another, and then charging as if the work were freshly produced, is not appropriate. Davis v. Sec'y of Health & Human Servs., 105 Fed. Cl. 627, 638 (2012); Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 730-31 (2011).

In this case, the invoices initially billed 14.1 hours, at a cost of $4,175.50, for the reply brief. This much time is not reasonable. A reasonable amount of time is 4 hours of partner time plus 1.4 hours of associate time charged by JCR. Thus, the total cost for the fees application is $1,673.00. This results in a deduction of $2,502.50.

The amount awarded for attorneys' fees in this case is reduced by $4,427.50. Ms. Abbott is awarded $32,869.50 in attorneys' fees.

**B. Costs**

Ms. Abbott asks for $16,330.59 in costs. A small amount ($2,180.59) is for routine items such as obtaining medical records. These are reasonable.

The bulk of the costs are for obtaining reports from the experts. Ms. Abbott asks that her experts be compensated as follows: at a rate of $500.00 per hour (reduced to $400.00 in a later filing)[6] for Dr. Axelrod, and a rate of $450.00 per hour for Dr. Siegler. Pet'r's Mot. at 30. Respondent argues that the hourly rates requested for Ms. Abbott's experts should be reduced to $375.00 for Dr. Axelrod (his 2011 rate adjusted for CPI inflation), and to $350.00 for Dr. Siegler. Resp't's Opp'n at 18-20.

The total amount requested for Dr. Axelrod to prepare his expert report, $2,000.00, is not unreasonable. Furthermore, Dr. Axelrod has requested a reduced rate for his work in this case which is only $25 more than the rate proposed by respondent. Thus, the undersigned awards $2,000.00 in interim costs for work performed by Dr. Axelrod.

The disagreement regarding Dr. Seigler's hourly rate is more significant as the hourly rates proposed by the parties differ by $100.00. To support her argument that Dr. Seigler's hourly rate should be $450.00, Ms. Abbott cites Dr.

---

[6] Ms. Abbott listed Dr. Axelrod's hourly rate as $500.00 in her motion, but the attached billing records show Dr. Axelrod billed Ms. Abbott at a rate of $400.00. Compare Pet'r's Mot. at 30 (requesting $500.00 per hour) with Pet'r's Mot., Attach. A, at 38 (billing $400.00 per hour). Ms. Abbott later acknowledged the mistake, indicating that Dr. Axelrod billed at a reduced rate of $400.00, "rather than his usual $500 per hour rate, given the limited issue he was asked to address." Pet'r's Reply to Resp't's Opp'n at 16 n.10. The rate correction, however, did not alter the total amount requested for Dr. Axelrod's work to date ($2,000.00). See Pet'r's Mot., Attach. A, at 38.

11

Seigler's qualifications set forth in his CV and asserts that "$450 per hour is Dr. Seigler's normal hourly rate." Pet'r's Mot. at 32. Because the quality of the expert's work is a factor that should be considered when determining the appropriate rate, it is advantageous to have heard the expert witness's testimony before making this determination. See Al-Uffi, 2015 WL 6181669, at *14 (noting that interim expert costs are more commonly awarded after a hearing). Thus, the undersigned declines to award expert costs at this time for work performed by Dr. Seigler. An entitlement hearing may be held in June 2017. Following the hearing, Ms. Abbott may again file for interim costs, including additional costs which have been incurred.

The undersigned reduces the amount of interim costs awarded by $12,150.00 (the amount billed for Dr. Seigler's work). The amount of interim costs awarded is $4,180.59.

## Conclusion

The undersigned finds an interim award of attorneys' fees and costs appropriate at this time. Of the total amount of attorneys' fees requested ($37,297.00), Ms. Abbott is awarded **$32,869.50.** Of the total amount of costs requested ($16,330.59), Ms. Abbott is awarded **$4,180.59**. The undersigned will address Ms. Abbott's request for $12,150.00 in expert costs for Dr. Seigler's work at a later date.

**Accordingly, the undersigned awards the total of $37,050.09 as a lump sum in the form of a check jointly payable to Ms. Abbott and Ms. Abbott's counsel, Andrew Downing.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

> s/Christian J. Moran
> Christian J. Moran
> Special Master