# In the United States Court of Federal Claims

No. 14-907V

(E-Filed: October 8, 2020)[1]

|  |  |
|---|---|
| ANNE ABBOTT,<br>on behalf of her minor child, R.A., | )<br>)<br>) |
| Petitioner, | ) |
| v. | ) |
| SECRETARY OF HEALTH<br>AND HUMAN SERVICES, | )<br>)<br>) |
| Respondent. | ) |

Interim Award of Costs;
Reasonable Hourly Rate for
Experts; Reasonable
Compensable Hours for Experts.

Andrew D. Downing, Phoenix, AZ, for petitioner.

Ida Nassar, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, C. Salvatore D'Alessio, Acting Director, Catharine E. Reeves, Deputy Director, Gabrielle M. Fielding, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

On May 14, 2020, the special master issued his decision awarding costs on an interim basis in this vaccine case. See ECF No. 131. On May 18, 2020, petitioner, on behalf of her minor child, R.A., filed a motion for review of the special master's decision, ECF No. 132, and a memorandum in support thereof, ECF No. 133. Respondent filed its response on June 17, 2020. See ECF No. 137. And, with leave of court, petitioner filed a reply in support of the motion on July 9, 2020. See ECF No. 141. Petitioner's motion is fully briefed and ripe for decision. For the following

---

[1] This opinion was issued under seal on September 18, 2020, in accordance with Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims (Appendix B to the Rules of the United States Court of Federal Claims). The parties had fourteen days within which to propose redactions. No redactions were proposed by the parties. Thus, the sealed and public version of this opinion are identical, except for the publication date and this footnote.

reasons, petitioner's motion for review is **DENIED** in part, and this case is **REMANDED** in part to the special master for further proceedings.

I.  Background

Petitioner filed her petition in this case on September 26, 2014.  See ECF No. 1.  Therein, petitioner alleges that her minor child suffered serious injuries after receiving a measles-mumps-rubella (MMR) vaccination.  See id. at 1-2.  Petitioner's "claim that a measles-mumps-rubella ('MMR') vaccination harmed her child, R.A., remains pending while the parties explore an informal resolution."  ECF No. 131 at 1.

During the pendency of this case, petitioner has filed three motions requesting awards of interim attorneys' fees and costs.  Petitioner filed the first motion on July 1, 2015.  See ECF No. 32.  On February 10, 2016, petitioner filed a motion for a decision on the motion for interim attorneys' fees and costs because the parties were unable to resolve the matter.  See ECF No. 57.  The special master granted the motion in part, but "reserve[d] the issue of the costs paid for [petitioner's] expert, Dr. [David] Siegler, for a later determination."  ECF No. 58 at 2.  When petitioner made the initial request for interim fees and costs, petitioner had filed an expert report from Dr. Siegler, a pediatric neurologist, and had incurred costs for his expert services in an amount of $12,150.  See id. at 5, 6.

The parties disagreed with regard to the reasonableness of Dr. Siegler's hourly rate, and the special master denied petitioner's first request for an interim award to include costs incurred for Dr. Siegler's expert services as premature.  See id. at 11-12.  He concluded as follows:

> Because the quality of the expert's work is a factor that should be considered when determining the appropriate rate, it is advantageous to have heard the expert witness's testimony before making this determination. See [Al-Uffi v. Sec'y of Health and Human Servs., No. 13-956V, 2015 WL 6181669, at *14 (Fed. Cl. Spec. Mstr. Sept. 30, 2015)](noting that interim expert costs are more commonly awarded after a hearing).  Thus, the undersigned declines to award expert costs at this time for work performed by Dr. Seigler.  An entitlement hearing may be held in June 2017.  Following the hearing, Ms. Abbott may again file for interim costs, including additional costs which have been incurred.

Id. at 12.

On October 22, 2018, petitioner filed her second motion for an interim award of attorneys' fees and costs.  See ECF No. 92.  The motion, again, sought an award to include costs incurred for Dr. Siegler's expert services.  Petitioner requested

2

compensation for the amount included in her initial motion, $12,150, plus an additional $25,750 for the cost of Dr. Siegler's supplemental expert report, for a total of $37,900. See ECF No. 92-1 at 36; ECF No. 100 at 7.  The special master, on March 19, 2019, again found that given the parties' disagreement about the reasonableness of Dr. Siegler's rates, an award of such costs was premature:

> Since Dr. Siegler has not yet had the opportunity to testify, the undersigned declines to award expert costs at this time for work performed by Dr. Seigler. Following a decision on the parties' briefs or an entitlement hearing, Ms. Abbott may again file for Dr. Siegler's costs, including any additional costs which have been incurred.

Id. at 8.

On March 20, 2019, petitioner filed a motion for reconsideration of the special master's March 19, 2019 decision.  See ECF No. 102.  And on May 15, 2019, petitioner filed a third motion seeking an interim award of costs in an effort to recover the $37,900 petitioner's counsel had paid Dr. Siegler.  See ECF No. 108.  While the two motions were pending, the parties agreed to pursue alternative dispute resolution, and the special master cancelled the entitlement hearing which had been scheduled for October 27, 2020.  See ECF No. 128 at 1 (April 29, 2020 order).  Shortly thereafter, on May 14, 2020, the special master issued his decision ruling on petitioner's motions.  See ECF No. 131.

As a predicate matter, the special master agreed with petitioner that the case was eligible for an award of attorneys' fees and costs because petitioner "possessed a reasonable basis for the claim asserted in her petition." Id. at 3.  The special master also found that an interim award of attorneys' fees and costs was timely.  He explained that, despite his earlier rulings deferring any award for costs incurred for Dr. Siegler's expert services until after the entitlement hearing:

> the parties settlement efforts change[d] the balance.  It is foreseeable, although not guaranteed, that the parties will agree to resolve the case informally.  If so, a hearing will not be held, and the undersigned would resolve the reasonableness of Dr. Siegler's request as part of an application for final fees without the benefit of hearing his testimony.  Alternatively, if settlement efforts do not reach fruition, then Dr. Siegler will remain without payment for probably one year until a hearing can be rescheduled.  To avoid this situation, payment for Dr. Siegler is appropriate now.

Id. at 4.

3

The final part of the special master's decision addressed the reasonableness of Dr. Siegler's fee.  See id. at 4-6.  From December 7, 2014, through June 30, 2015, Dr. Siegler proposed an hourly rate of $450 for his expert services.  See id. at 4.  He increased that proposed hourly rate to $500 for work performed after June 30, 2015.  See id.  After reviewing caselaw the special master deemed relevant, he concluded that a reasonable hourly rate for Dr. Siegler's services was $400.  See id. at 6.

The special master further reduced the award to petitioner due to inadequate descriptions of his work and charges for administrative work.  He explained:

> With respect to the number of hours, Dr. Siegler should provide additional detail.  For example, on December 19, 2015, Dr. Siegler states that he spent 2.5 hours when he "reviewed literature."  However, the articles that Dr. Siegler reviewed are not specified and without some information, assessing the reasonableness of his activity is difficult.  A separate issue is that Dr. Siegler has charged his full rate for performing tasks, such as collecting references, that could be delegated to a person charging a lower hourly rate.

Id.  As a result of these deficiencies, the special master reduced petitioner's award for costs incurred for Dr. Siegler's expert services by an additional ten percent, for a total award of $28,260.  See id.

Petitioner now asks the court to review the special master's decision to reduce Dr. Siegler's hourly rate and his compensable time.  See ECF No. 132.

II.     Legal Standards

   A.     Standard of Review

The United States Court of Federal Claims has jurisdiction to review the decision of a special master in a Vaccine Act case.  See 42 U.S.C. § 300aa-12(e)(2) (2018).  This grant of review jurisdiction extends to decisions related to an interim award of attorneys' fees and costs.  See Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372, 1376 (Fed. Cir. 2010).  "Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'"  de Bazan v. Sec'y of Health & Human Servs., 539 F.3d 1347, 1350 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa-12(e)(2)(B) and citing Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1277 (Fed. Cir. 2005)).

This court uses three distinct standards of review in Vaccine Act cases, depending upon which aspect of a special master's judgment is under scrutiny.

4

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.

Munn v. Sec'y of Dep't of Health & Human Servs., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). An award of attorneys' fees and costs is a discretionary decision, reviewed by this court under the abuse of discretion standard. See Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356 (Fed. Cir. 2011).

In order to conclude that the special master has abused his discretion, the court must find that the special master's decision was: "(1) . . . clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the . . . [special master] rationally could have based his decision." Chuisano v. United States, 116 Fed. Cl. 276, 284 (2014) (citations omitted). As the United States Court of Appeals for the Federal Circuit has held, "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." Hines v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991).

     B.    Expert Fees

"Petitioner bears the burden of proving that her expert costs are reasonable." Caves v. Sec'y of Dep't of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013). The Federal Circuit has "endorsed the use of the lodestar approach to determine what constitutes 'reasonable attorneys' fees' under the Vaccine Act." Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347 (Fed. Cir. 2008) (citing Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993)). Under that approach, the court:

> first determines an initial estimate of a reasonable attorneys' fee by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings.

Avera, 515 F.3d at 1347-48 (quoting and citing Blum v. Stenson, 465 U.S. 886, 888 (1984)).

Special masters may consider a number of factors in awarding expert fees, including:

> (1) [T]he witness'[s] area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the [information] provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the [Special Master] in balancing the interests implicated by the [Vaccine Act].

Frantz v. Sec'y of Health & Human Servs., 146 Fed. Cl. 137, 145 (2019) (citations omitted) (alterations in original). Special masters should not award fees for hours that are "excessive, redundant, or otherwise unnecessary." Saxton, 3 F.3d at 1521 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). In addition, special masters may reduce "a medical expert's hours for vague billing entries, as experts, like attorneys, must detail and explain work performed." Lewis v. Sec'y of Health & Human Servs., No. 15-907V, 2020 WL 4433775, at *4 (Fed. Cl. July 15, 2020).

III.   Analysis

In her motion for review, petitioner argues that the special master "arbitrarily and capriciously reduced Dr. Siegler's rate" and his "compensable time." ECF No. 132 at 1. In the memorandum in support of her motion, petitioner characterizes the special master's reductions as "legal error." ECF No. 133 at 10.

Petitioner first recounts, in detail, Dr. Siegler's considerable experience offering his opinion in the vaccine program, as both a treating physician and as an expert. See id. at 10-15. In several of the cases cited by petitioner, the presiding special master awarded Dr. Siegler $500 per hour, the rate requested in this case. See id. at 12-14. And petitioner notes that "[i]n every one of [the cited] cases, Dr. Siegler's rate as an expert in pediatric neurology was either $450/hr. or $500/hr." Id. at 14.

Here, the special master acknowledged that Dr. Siegler had been awarded fees in a number of cases, but upon review of those cases, found that "only one case contained a discussion of Dr. Siegler's hourly rate, . . . and that case set his hourly rate at $400/hour." ECF No. 131 at 6 (citing Zumwalt v. Sec'y of Health & Human Servs., No. 16-994V, 2018 WL 6975184 (Fed. Cl. Spec. Mstr. Nov. 27, 2018)). In each of the other cited cases, Dr. Siegler's compensation was either stipulated to, not objected to, or not substantively discussed. See id. at 4-6. The special master held in this case that "[c]onsidering that one discussion of Dr. Siegler's hourly rate, the lack of any other substantive discussions of Dr. Siegler's hourly rate, and the fact that the undersigned has not yet observed Dr. Siegler testify, the undersigned finds that $400/hour is a reasonable hourly rate for Dr. Siegler." Id. at 6.

6

According to petitioner, the special master's decision should be reversed based not only on Dr. Siegler's history of being awarded a higher hourly rate in vaccine program cases, but also based on his credentials, his long experience in the field of pediatric neurology, and the quality of his work. See ECF No. 133 at 15. In response, respondent does not affirmatively argue that $400 per hour is the correct rate of compensation for Dr. Siegler, but rather, argues that "the Special Master was entirely within his discretion to award an hourly rate of $400 for Dr. Siegler." ECF No. 137 at 16.

In the court's view, the special master's decision does not provide adequate detail for the court to determine whether his award decision involved an abuse of discretion. The special master, of course, has broad discretion to determine the appropriate hourly rate of compensation for an expert. And the court does not find at this time that $400 per hour is inappropriate; rather, the court finds that the special master must explain more fully the basis for his decision.

As this court has previously outlined, special masters may consider a number of factors in awarding expert fees, including:

> (1) [T]he witness'[s] area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the [information] provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the [Special Master] in balancing the interests implicated by the [Vaccine Act].

Frantz, 146 Fed. Cl. at 145. In both petitioner's motion for reconsideration and her third motion for an interim award of costs, petitioner emphasized the quality of Dr. Siegler's reports produced in this case, his "high level of expertise in the area of pediatric neurology—the area for which he is being offered as an expert in this case," and his considerable experience in the vaccine program. ECF No. 108 at 2; see also ECF No. 102 at 5.

The special master's decision does not indicate that he considered these factors despite the fact that petitioner's argument was based in large part thereon. And while a failure to consider these particular factors may not necessarily indicate an abuse of discretion, the incomplete assessment of the facts that the special master did consider is more problematic. The special master explicitly relied on the hourly rate set for Dr. Siegler in Zumwalt, but failed to address the fact that in Zumwalt, Dr. Siegler served as a treating physician, not an expert witness. See ECF No. 131 at 6. The special master in Zumwalt, in fact, reduced Dr. Siegler's proposed hourly rate for precisely that reason, finding that Dr. Siegler's "role as one of [petitioner's] treaters . . . renders his

7

participation in this case a bit different from an expert" and that his fee "should also take into account that his testimony did not require the kind of labor that an expert solely offering a third-party opinion would have to perform." Zumwalt, 2018 WL 6975184, at *5. If the special master considers this distinction to be irrelevant or otherwise not sufficiently material to affect Dr. Siegler's hourly rate in the context of this case, he should explain his reasoning so that the court can conduct a proper review thereof. The court will remand the case to the special master so that he may do so.

    B.    Compensable Time

Petitioner also objects to the special master's decision to reduce Dr. Siegler's compensable hours. She argues that the special master made "an arbitrary and capricious 10% across-the-board reduction" to Dr. Siegler's compensable hours. ECF No. 133 at 18. The special master found as follows:

> With respect to the number of hours, Dr. Siegler should provide additional detail. For example, on December 19, 2015, Dr. Siegler states that he spent 2.5 hours when he "reviewed literature." However, the articles that Dr. Siegler reviewed are not specified and without some information, assessing the reasonableness of his activity is difficult. A separate issue is that Dr. Siegler has charged his full rate for performing tasks, such as collecting references, that could be delegated to a person charging a lower hourly rate. For these reasons, an additional 10 percent is removed from Dr. Siegler's invoice.

ECF No. 131 at 6.

According to petitioner, this reduction was unjustified because "[t]he special master criticizes one 2.5 hour entry . . . yet . . . applies a 10% reduction across the board." ECF No. 133 at 18. In petitioner's view, "applying an across-the-board percentage reduction for no reason whatsoever is completely arbitrary and capricious and prejudicial to Petitioner." Id. Petitioner contends that "[t]he special master takes issue with Dr. Siegler's billing for 'collecting references,' but then gives no rationale as to why this task deserved a lower hourly rate." Id.

The court finds that the ten percent reduction was a permissible exercise of the special master's discretion. Petitioner may disagree with the special master's assessment that Dr. Siegler's billing entries lacked specificity, or his determination that Dr. Siegler should not be compensated at his full hourly rate for tasks the special master views as delegable. Her disagreement notwithstanding, the special master's conclusion that certain billing entries needed "additional detail," or charged for tasks "that could be delegated to a person charging a lower hourly rate," are reasoned bases for his decision in this regard. ECF No. 131 at 6. In addition, the fact that the special master did not go

8

line-by-line through the billing entries does not amount to an abuse of discretion. See Raymo v. Sec'y of Health & Human Servs., 129 Fed. Cl. 691, 702 (2016) ("In evaluating a fee request, a special master is permitted to reduce attorneys' hours found to be excessive by a percentage; a 'line-by-line' determination is not required.") (citation omitted).

For these reasons, the court will deny petitioner's motion for review as it relates to the special master's decision to reduce Dr. Siegler's compensable hours by ten percent.

IV.  Conclusion

Accordingly,

(1) Petitioner's motion for review, ECF No. 132, is **DENIED** in part, and **REMANDED** in part;

(2) The special master's decision to reduce Dr. Siegler's compensable hours, is **SUSTAINED**;

(3) The remainder of the case, relating to the special master's decision to reduce Dr. Siegler's hourly rate is **REMANDED** to the special master for further proceedings in accordance with this opinion; and

(4) The parties shall separately **FILE** any **proposed redactions** to this opinion, with the text to be redacted clearly blacked out, on or before **October 2, 2020**.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge